Angela **GONZALEZ**, Plaintiff,

v.

Richard S. **SCHWEIKER**, Secretary of Department of Health and Human Services, Defendant.

No. 78 CV 1191 (ERN).

United States District Court, E. D. New York.

June 8, 1982.

---

Luis R. Sanchez, Elizabeth, N.J., for plaintiff.

Edward R. Korman, U.S. Atty., E.D.N.Y. by Cyril Hyman, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

Plaintiff brought this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the defendant Secretary of Health and Human Services ("Secretary"), which denied her application for a period of disability and Social Security disability insurance benefits. Based upon the pleadings, the administrative record and the Secretary's memorandum of law, each party seeks judgment. For the reasons stated below, the Court concludes that the Secretary's determination is supported by substantial evidence and should be affirmed.

This case has followed an unusual course. Plaintiff, now 66 years of age, has already been awarded Supplemental Security Income (SSI) based on disability as of October 1978 in addition to Social Security benefits. Tr. 197, 369.[1] The only issue remaining is whether by reason of claimed prior illness, she was entitled to Social Security disability insurance benefits or SSI for any period before October 1978.

Plaintiff came from Cuba to the United States in 1962. Tr. 264. She was then 47 years old, had an eighth grade education and is single. She is unable to communicate in English but reads and writes Spanish well. In Cuba she had worked for 20 years doing saleswork in a store. Tr. 214. After her arrival here she worked primarily as a sewing machine operator, wig stylist, and garment embroiderer until 1972–1973 when her earnings decreased substantially. Tr. 271. Her explanation was that she became ill on the job, could not complete the required amount of work and was laid off about July 1973. Tr. 176–77. She did not return to work thereafter. *Id.*

On February 5, 1976, plaintiff filed separate applications for disability insurance benefits and supplemental security income declaring that she had been disabled since August 1973 because of "sciatic pain, anxiety." Tr. 243, 264.[2] Those applications were denied initially and on reconsideration, following which plaintiff requested a *de novo* hearing. After such a hearing on July 12, 1977, the administrative law judge (ALJ) found that plaintiff was not under a disability. That determination was adopted by the Secretary after the Appeals Council upheld the ALJ's findings. Tr. 324–31, 164–65.

Subsequent to the Secretary's determination, plaintiff filed another application for disability insurance benefits and supplemental security income on October 26, 1978. Tr. 369. With that application, she submitted additional evidence which had not

---

1. References are to pages of the administrative record.

2. A later application for disability insurance benefits which she filed on November 3, 1976, claimed only "sciatic condition" as a disability. Tr. 235.

been considered. Previously this action had been filed; however, pursuant to stipulation of the parties, the claim was remanded to the Secretary for reconsideration in light of the additional evidence. The Appeals Council thereupon vacated its denial of plaintiff's request for review and remanded the case to an ALJ for further proceedings.

At a supplemental hearing held on July 26, 1979 and May 21, 1980 (Tr. 166–232), a different ALJ considered the case *de novo* and found that the evidence did not establish impairments of sufficient severity and duration to constitute a disability prior to the expiration of plaintiff's insured period in March 1978. Tr. 143–48. The Appeals Council in affirming that decision on April 28, 1981, noted that its effect was to deny plaintiff a period of disability and disability benefits under her original application of February 11, 1976, and therefore render her "not eligible for supplemental security income at any time prior to October 1978." Tr. 133. Thus that decision does not affect the SSI and other benefits plaintiff has apparently been receiving since October 1978.

 "It is well established that the burden of proving disability is on the claimant, 42 U.S.C. § 423(d)(5) . . . ." *Aubeuf v. Schweiker*, 649 F.2d 107, 111 (2d Cir. 1981). See also *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980), and *Gold v. Secretary of H.E.W.*, 463 F.2d 38, 41 (2d Cir. 1972). Furthermore, that burden includes the requirement that the claimant's disability existed *prior* to the expiration of her insured status. *De Nafo v. Finch*, 436 F.2d 737 (3d Cir. 1971); *Henry v. Gardner*, 381 F.2d 191 (6th Cir. 1967), *cert. denied*, 389 U.S. 993, 88 S.Ct. 492, 19 L.Ed.2d 487 (1967), *rehearing denied*, 389 U.S. 1060, 88 S.Ct. 797, 19 L.Ed.2d 864 (1968); *Toledo v. Secretary of Health, Education and Welfare*, 308 F.Supp. 192 (D.P.R.1970), *aff'd*, 435 F.2d 1297 (1st Cir. 1971). In this case there is no question that plaintiff's insured status expired on March 31, 1978. Tr. 213. Hence it was essential that medical evidence be available to establish the existence of a qualifying disability prior to that date. Plaintiff cannot sustain her burden of proof solely through her own statements that she was disabled during the insured period and was too ill to work. *Ramirez v. Secretary of Health, Education and Welfare*, 528 F.2d 902 (1st Cir. 1976); *Peterson v. Gardner*, 391 F.2d 208 (2d Cir. 1968).

Plaintiff was represented by an attorney at the second (supplemental) hearing at which it was agreed that all the medical evidence offered at the 1977 hearing could also be considered as well as any subsequent evidence the attorney wished to present. Tr. 171. Plaintiff testified fully regarding her education in Cuba and her work experience there and here, her illnesses, doctors, medications and activities after she ceased working, including a trip to Miami in March 1980 to see Dr. Jorge Picaza, who had performed lumbar disc surgery on her in Cuba some 21 years before. Tr. 172–86, 373–74.[3]

In sum, from December 1974 to March 1980 plaintiff has been treated or examined by at least ten doctors. In her own statement given to a Social Security Administration (SSA) interviewer, plaintiff claimed she had visited Dr. Goltran J. Perez once a month from December 1974 to October 1976 "for checkup on her condition and to have medication prescribed." This medication was to "relieve pain of sciatica condition and to relieve nervousness." Tr. 285. In handwritten notes dated February 3, 1976, and May 5, 1980, Dr. Perez confirmed that plaintiff had been under his care since 1974 and was unable to work "due to her chronic back ache" from which she was "suffering intractable sciatic pain." Tr. 294, 375–76. On February 2, 1978, however, his diagnosis of her back problem was "mild arthritis" and "mild osteoporosis of the spine" from which she experiences "pain and tenderness" and "restriction of capacity to walk, sit or stand." Tr. 352.

3. Presumably this explains the omission of her testimony at the 1977 hearing, which is summarized in the previous ALJ's decision. Tr. 324–31.

On April 6, 1976, plaintiff was examined at the request of the State Bureau of Disability Determinations by Dr. Kenneth E. Seslowe, a board certified specialist in orthopedic surgery. At that time plaintiff told Dr. Seslowe she could walk 5 to 6 blocks but thereafter had pain. She also told him that she had low back pain radiating down the right leg for over 20 years. Examination of her back revealed no spasm but 10 degrees of limitation of flexion and of lateral bend to the right, with some decreased sensation over the lateral thigh on the right. X-ray examination revealed prior surgery at the L–4, L–5 level but no evidence of fracture or dislocation, and disc spaces were well maintained. Dr. Seslowe concluded there was evidence of "a right sided sciatica, mild" but no need for surgery. In his opinion plaintiff could walk for 10 blocks, lift and carry 10 pounds, sit for two hours at a time, and use public transportation. Tr. 296–97. On a requested re-examination on September 16, 1976, Dr. Seslowe adhered to his original view of plaintiff's ability to walk, lift and sit, adding that arthritic changes noted were "minor" and that fine and gross motions of the upper extremities were not affected. Tr. 298.

On January 5, 1977, plaintiff was examined by Dr. Herman H. Pelz, a specialist in internal medicine, again at the request of the Bureau of Disability Determinations. Tr. 303. Dr. Pelz noted plaintiff's statements that her back pain was relieved by analgesics; that she shops and cleans her home, can walk up to 10 blocks, climb stairs slowly, and has no limitation as to sitting or finger movements. Tr. 304. Dr. Pelz found her to be

"a well-developed, well-nourished white female appearing younger than her stated age of 61 and in no acute or chronic distress." Tr. 304.

Dr. Pelz's examination revealed findings similar to those of Dr. Seslowe, namely, normal chest film, no heart problems, and "intermittent sciatica and back pain relieved by analgesics." Tr. 305.

Contemporaneously, plaintiff was examined by Dr. Morton B. Coburn, a specialist in otorhinolaryngology, regarding complaints of vertigo for the past two to three years. Tr. 301. Plaintiff stated she had been deaf in the left ear for 13 years and had used a hearing aid in that ear for the past 10 years. Examination of ears, nose and throat for pathology was essentially negative. Dr. Coburn diagnosed the condition as otosclerosis for which surgery would be of benefit. Tr. 301.

On March 29, 1977, plaintiff was examined by Dr. Benjamin J. Becker, a board certified specialist in psychiatry and neurology, also at the request of the Bureau of Disability Determinations. Tr. 319–20, 322. Dr. Becker noted that plaintiff was a "well dressed, well groomed woman who looks well for her age," and came by subway to his office accompanied by her sister. Tr. 320. He noted further that she lives in an apartment with two sisters and an 89 year old mother, and that she passes her time taking care of the mother, reading and watching television. Dr. Becker found her well oriented for time, place and events without organic mental impairment or any signs of hallucination or delusion. *Id.* His diagnosis was "anxiety reaction" based upon the moderate degree of anxiety he observed. Tr. 321.

On March 13, 1978, plaintiff was examined a second time by Dr. Pelz. Tr. 354–55. He noted that she climbed on his examining table unassisted with no distress. In a detailed report, accompanied by a radiographic report of Dr. Paul Tartell, a board certified radiologist (Tr. 353, 360), Dr. Pelz concluded that aside from "mild osteoarthritis of the lumbar spine and mild hypertension," both under treatment with fairly good results, plaintiff was "essentially asymptomatic." Tr. 354–55.

At the July 1979 supplemental hearing which led to this review action, a qualified vocational expert, responding to hypothetical questions, testified that plaintiff's former occupations of wig stylist and embroi-

derer could be classified as unskilled or semi-skilled work of a sedentary to light nature. Tr. 217–19. Based upon assumptions that she was able to perform fine and gross manipulations despite some pain and numbness in her hands; that her back pain was not severe; that she could remain seated for periods of time, could lift up to 10 pounds, and experienced moderate anxiety and hypertension, it was the vocational expert's opinion that she could perform those former occupations during the relevant period of time. If, however, her pain was severe, then he felt she could not perform such work activities. Tr. 219.

■ As was pointed out in *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980), "[i]t is not the function of a reviewing court to consider the question of disability *de novo*. Rather, judicial review is limited to an assessment of whether the Secretary's findings are supported by substantial evidence; if they are supported by such evidence, they are conclusive." Moreover, it is settled that the ALJ, as the Secretary's fact finder, "has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

Here it cannot be said that the ALJ did not adequately evaluate the disabling effect of plaintiff's conceded lower back pain in combination with her other impairments of hypertension and anxiety. Nor did he fail to give proper weight to the opinions of Dr. Perez, plaintiff's treating physician. In view of the subjective nature of pain, the ALJ was certainly not bound by Dr. Perez's description of plaintiff's sciatic pain as "intractable," nor by his conclusion that "she should not work." Tr. 294. To the extent that Dr. Perez made any medical findings, he noted in February 1976 that she was limited "in a moderate degree in regards to bending" and was "able to take care of her own personal needs." Tr. 295. In a subsequent report in February 1978, Dr. Perez

diagnosed her condition as "mild arthritis" with "pain and tenderness in areas affected" and "restriction of capacity to walk, sit or stand." Tr. 352. He also noted that she was being treated for hypertension. These findings were essentially the same as those of Dr. Pelz in March 1978, as noted above. Finally, plaintiff's own long-time neurosurgeon, Dr. Picaza in Miami, noted that on her visit to his office in March 1980, she was able to move her back "in any direction without showing pain or limitations." Tr. 373.

■ The array of medical evidence in the record amply supported the Secretary's finding that plaintiff had the residual capacity, prior to the expiration of her insured period, to perform light or sedentary work activity of the type she had previously engaged in. The Secretary's determination is affirmed and his motion for judgment dismissing the complaint is granted.

SO ORDERED.

The Clerk is directed to enter judgment in favor of the defendant and to send copies of this memorandum of decision to the attorneys for the parties.