Peter VITALE, Plaintiff,

v.

Kenneth S. APFEL, Commissioner
of Social Security, Defendant.

No.· CV 97–2557.

United States District Court,
E.D. New York.

May 13, 1999.

Peter Vitale, Kings Park, NY, plaintiff pro se.

Zachary W. Carter, United States Attorney, by Richard M. Molot, Assistant U.S. Attorney, Brooklyn, NY, for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff seeks judicial review, pursuant to § 205(g) of the Social Security Act (the "Act"). 42 U.S.C. § 405(g), of a final determination of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits. The Commissioner moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons below, the motion is granted.

## I. BACKGROUND

### A. Procedural History

Plaintiff Peter Vitale applied for Social Security disability insurance benefits on March 1, 1994, alleging disability since November 14, 1980. Transcript of Administrative Record ("Tr.") 42. Plaintiff met the Act's insured status requirements and was fully insured through December 31, 1985. His application was denied initially on June 30, 1994 and on reconsideration on September 16, 1994. On October 24, 1994, plaintiff requested a hearing by an Administrative Law Judge ("ALJ").

A hearing was held before an ALJ on June 20, 1995. By decision dated July 24, 1995, the ALJ held that plaintiff was not disabled under the Act. Tr. 19–29. Plaintiff requested that the Appeals Council review the ALJ's decision, and on March 28, 1997, the Appeals Council denied plaintiff's request for review. Plaintiff then commenced this action.

### B. The Administrative Record

#### 1. Plaintiff's Testimony

The administrative record showed the following: Plaintiff was born on July 11, 1944. He received a high school equivalency diploma. On March 1, 1979, plaintiff was involved in an accident while on the

job as a sanitation worker with the Department of Sanitation when his sanitation truck was struck by another truck. He returned to work shortly after the accident, first on light duty and then on full duty. However, he stopped working on November 14, 1980. He claimed he was disabled since that date due to back/neck pain and depression. He testified that he received a disability pension of $1,300.00 a month from the Department of Sanitation. As noted, plaintiff's insured status expired on December 31, 1985, at which time he was 41 years of age.

Plaintiff testified that after he stopped working, he experienced pain in his back every day, and that his back would "go out" and he would end up bedridden "[s]ometimes for months at a time." He testified that he experienced depression, which had affected his marriage and his ability to leave the house and perform daily chores. He testified that he saw a clinical psychologist, Dr. Roslyn R. Braun, for a couple of months in the early 1980's due to marital problems. He further testified that he was not hospitalized and did not receive orthopedic treatment between November 14, 1980 and December 31, 1995, when his insured status expired, although he recalled receiving chiropractic treatment. He did not recall if, prior to the expiration of his insured status, any doctor had prescribed medication for him.

Plaintiff also testified that since 1980 he had experienced pain every day while sitting, standing, and walking. He stated that he could lift a light bag of groceries, and his disability reports showed that he "sometimes" cooked, vacuumed, washed dishes, and drove his car. He testified that he enjoyed fishing, but that after the accident he was not able to regularly fish and had not done so since August 1994. Plaintiff maintained that his condition has become worse since December 31, 1985. Plaintiff indicated that he occasionally drove a limousine over a four to five year period after December 31, 1985 until the limousine service went out of business.

### 2. *Medical Evidence*

Plaintiff submitted a medical report by Dr. Braun dated June 17, 1980. Dr. Braun diagnosed plaintiff as having severe anxiety and depression related to chronic back pain. She also reported that plaintiff had marital problems and recommended that he undergo psychiatric treatment.

Plaintiff first sought treatment by a chiropractor, Dr. Kevin Barbier, on April 28, 1992. At the time, plaintiff reported a long history of low back pain and a recent onset of back pain on April 1, 1992. Plaintiff underwent treatment once a week until June 3, 1992. Plaintiff returned to Dr. Barbier in July 1992 for treatment of recent onset of neck and shoulder pain. This treatment period lasted from July 28, 1992 through August 10, 1992.

As of April 1992, Dr. Barbier reported that plaintiff's lumbar region showed flexion to 70 degrees, extension to 20 degrees, lateral flexion right and left to 30 and 20 degrees, respectively. Cervical region showed lateral flexion right and left to 30 and 40 degrees, respectively, flexion/extension to 45 degrees, and rotation right and left to 45 and 30 degrees, respectively. He stated that plaintiff had cervical degenerative joint disease and recommended that motions of trunk flexion and rotation should be avoided, e.g., raking and vacuuming. Dr. Barbier opined that plaintiff could lift up to 10 pounds occasionally and up to five pounds frequently; stand and/or walk for up to six hours per day; sit for less than six hours per day; and push and/or pull with no limitation. Additionally, he noted no other limitations, such as postural, manipulative, visual, communicative or environmental.

In addition, Dr. Barbier submitted a report stating that he examined plaintiff on April 19, 1995. Plaintiff's symptoms included low back pain with radiation to his leg and neck pain with radiation to his arms. At the time, Dr. Barbier completed a residual functional capacity form in

which he indicated that plaintiff was able to sit for two hours, stand/walk for two hours, lift up to 20 pounds occasionally, and carry up to 10 pounds occasionally. He also indicated that plaintiff could bend, climb steps, and reach occasionally, that he could grasp and perform fine manipulations, but that he could not push/pull. Dr. Barbier opined that plaintiff could not return to work as a sanitation worker due to pain, muscle spasm, and weakness, that plaintiff had been disabled since March 1, 1979, and that his prognosis was poor.

On June 2, 1994, Dr. Samir Dutta performed a consultative examination of plaintiff. At that time, plaintiff complained of back and neck pain with a history of depression. Upon physical examination, Dr. Dutta noted that plaintiff had limited neck flexion and stiffness, but full range of motion of the shoulders, elbows, and wrists. He also noted that plaintiff's grip and manipulation abilities were normal; that his straight leg raising test was positive at 65 degrees bilaterally; that his knee and ankle joint movements were normal; that his plantar flexion, knee jerks, and ankle jerks were normal; and that his muscle tone and power were normal. He further noted that plaintiff could stand, squat, and walk on his toes and heels, although he had slight tenderness of the lower lumbar spine with moderate paraspinal muscle spasm present, and that his spinal flexion was to 65 degrees, lateral bending to 15 degrees, and extension to 15 degrees. The remaining neurological examination was normal. Dr. Dutta's impression was that plaintiff had a history of depression and chronic low back ache with osteoarthritic degenerative changes of the cervical and lumbosacral spines. Dr. Dutta opined that plaintiff's depression might improve if adequately treated.

On June 10, 1994, Dr. Myles Schneider conducted a psychiatric examination of plaintiff. At the time, plaintiff reported no history of psychiatric treatment. On examination, Dr. Myles noted that plaintiff's speech was relevant without looseness of association; that he was inarticulate and had difficulty expressing his thoughts; that he showed no evidence of hallucinations or delusions; that he showed no psychomotor retardation or depressive facies; that he seemed tense, downcast, and irritable; that his insight and judgment were fair to poor: that he denied suicidal ideation; that he was alert and oriented to time, place and person; that he had a fair fund of general information; and that he recalled two of three items after five minutes. Dr. Schneider's impression was Axis I: depressive disorder, not otherwise specified; Axis II: no mental disorder; Axis III: status post accident, low back pain, neck pain, and history of hepatitis and tinnitus. Dr. Schneider reported that plaintiff might benefit from ongoing psychiatric treatment or marital therapy and might be considered for vocational rehabilitation. Dr. Schneider observed that plaintiff appeared capable of understanding, recalling, and carrying out work instructions, and managing his own funds, and capable of dealing with coworkers and work supervisors, although he might have difficulty dealing with work pressures in a work setting.

Dr. Daniel Shapiro first treated plaintiff on August 3, 1994, reportedly for evaluation and treatment of injuries resulting from the March 1, 1979 accident. Plaintiff complained of constant neck and low back pain, anxiety, depression, headaches, and insomnia. Dr. Shapiro examined plaintiff on August 9, 1994, utilizing a computerized inclinometer for evaluation of permanent impairment. Dr. Shapiro stated that the range of motion assessment of plaintiff's cervical spine showed limitations resulting in a 26% impairment of the "whole person," and the range of motion of the lumbosacral spine resulted in a 21% impairment of the "whole person." In addition, Dr. Shapiro performed an electro-diagnostic study, which showed L5, S1 radiculopathy bilaterally. Dr. Shapiro also reported on January 18, 1995 that plaintiff complained of neck pain with numbness and

tingling down his right arm. Dr. Shapiro modified plaintiff's physical therapy to include ultrasound, electrical stimulation, neck massage, and cervical traction.

Dr. Roger Kramer, a psychologist, first treated plaintiff on October 6, 1994 for evaluation and treatment of chronic pain. Dr. Kramer initially opined that plaintiff's complaints of chronic pain and depression were valid and causally related to the March 1979 accident. In a June 1995 report, Dr. Kramer noted that plaintiff attended sessions to help with chronic pain and depression. Dr. Kramer further noted that plaintiff had learned techniques to help modulate pain to a tolerable level, although he was still depressed due to severe lifestyle limitations. Dr. Kramer expected to prescribe biofeedback and pain transformation strategies and continued cognitive therapy. Dr. Kramer believed that considering the chronic nature of plaintiff's pain and depression, the best result that plaintiff could achieve was a moderate decrease in his feelings of helplessness and hopelessness. Dr. Kramer opined that plaintiff was "significantly psychologically disabled and that the possibility of his ever returning to employment was remote."

3. *Evidence Submitted to the Appeals Council*

After the hearing and ALJ's decision, plaintiff's daughter submitted matter to the Appeals Council on plaintiff's request for review. None of the matter contained medical records for the relevant period. The Appeals Council, in denying plaintiff's request for review, noted that it considered those submissions but found that they did not provide a basis for changing the ALJ's decision.

## II. *DISCUSSION*

A. *Applicable Law*

1. *Standard of Review*

■ A final decision of the Commissioner may be set aside on judicial review

only if it not supported by substantial evidence or it is based upon an erroneous legal standard. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982). Substantial evidence is " 'more than a mere scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). The reviewing court does not conduct a de novo review as to whether the claimant is disabled, *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980); nor may it substitute its own judgment for that of the Commissioner, *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir.1991); *Valente v. Secretary of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984).

2. *Commissioner's Procedure for Evaluating Disability Claims*

Disability claims are reviewed by a five-step process. *See* 20 C.F.R. § 404.1520. The first step requires determining whether the claimant is employed. The second step requires determining whether the claimant has a "severe impairment." Once a severe impairment is established, the third step requires determining whether the impairment is one of the impairments listed in Appendix I of the Social Security regulations. If the claimant suffers from such impairment, a finding of disability follows. If the claimant does not have an impairment listed in Appendix I, the fourth step involves determining whether the claimant possesses the residual functional capacity to perform past relevant work. *See Perez*, 77 F.3d at 46. The claimant is disabled only if his impairment is of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *See* 42 U.S.C. § 423(d)(2)(A).

■ If the claimant sustains his burden of proof on the first four steps of the disability determination, the burden then shifts to the Commissioner to prove that the claimant possesses the residual functional capacity to perform substantial gainful work. *Perez,* 77 F.3d at 46. Thus, the Commissioner bears the burden of showing the existence of alternative substantial gainful work in the national economy only if claimant satisfies the burden of showing a disabling impairment prevented him from performing past work. *Id.* Where the claimant has multiple impairments, the Commissioner must consider the combined effect of those impairments in determining the claimant's ability to work. *Dixon v. Shalala,* 54 F.3d 1019, 1031 (2d Cir.1995).

### 3. *Establishing Disability*

■ As noted, under the five-step process, the initial burden of establishing the existence of a disability is on the claimant. *Arnone v. Bowen,* 882 F.2d 34, 38 (2d Cir.1989). A disabling impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The statute further requires that an individual will not be considered disabled unless medical and other evidence is furnished establishing the existence of an impairment "as the Commissioner of Social Security may require." *Id.* § 423(d)(5)(A).

When considering physicians' opinions, the Commissioner generally gives a treating physician's opinion greater weight than that of a non treating source. The Commissioner's regulations specify that under certain circumstances, the Commissioner will give "controlling" weight to a treating physician's opinion. *See* 20 C.F.R. § 404.1527(d)(2). Such opinions are given "controlling" weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and are consistent with other substantial evidence

of record. *Id.* § 404.1527(d)(2). When a treating physician's opinion is not given "controlling" weight, factors considered when determining the weight to give that opinion include the "[l]ength of the treatment relationship and the frequency of examination" as well as whether or not the opinion is supported by "medical signs and laboratory findings." *Id.* § 404.1527(d)(2)(i), (3). The Second Circuit has upheld the Commissioner's regulations regarding the weight to be given to a treating physician's opinion. *See Schisler v. Sullivan,* 3 F.3d 563, 568 (2d Cir.1993).

■ Where, as here, a plaintiff seeks disability benefits for a past term of disability, the plaintiff must prove he became disabled before the expiration of his insured status. *See* 42 U.S.C. § 423(a)(1)(A), (c)(1). Where a plaintiff's impairment continues and becomes more severe after the expiration of insured status, such exacerbation of a pre-existing injury cannot form the basis for determination of an earlier disability. *See Arnone,* 882 F.2d at 41. While the existence of a pre-existing disability can be proven by a retrospective opinion, such an opinion must refer clearly to the relevant period of disability and not simply express an opinion as to the claimant's current status. *See Jones,* 949 F.2d at 59–60.

### B. *Analysis*

■ Upon review of the record as a whole, this Court finds that the Commissioner's decision that plaintiff failed to show that he was disabled before the expiration of his insured status on December 31, 1985 is supported by substantial evidence. This Court agrees that the medical evidence was not sufficient to satisfy plaintiff's burden of proving that he was disabled.

### 1. *Medical Evidence*

Plaintiff asserted that he could not work due to back pain and depression since November 14, 1980. Regarding plaintiff's alleged mental impairment, Dr. Braun not-

ed seeing plaintiff on June 17, 1980, for complaints of severe anxiety and depression. Although she offered a diagnosis of severe anxiety and depression related to chronic back pain, there is no evidence of a clinical examination or that she provided or prescribed ongoing therapy. Significantly, there is no other evidence of treatment for alleged mental impairment until October 1994, more than 14 years later, when plaintiff began treatment with a psychologist, Dr. Kramer. Although Dr. Kramer opined that plaintiff is psychologically disabled and that the disability is causally related to the March 1979 accident, his opinion on causation does not clearly indicate the existence of a disability during the relevant period, i.e., prior to December 31, 1985, and was not based on any medical findings during that period. Moreover. Dr Schneider, who examined plaintiff in June 1994, reported that plaintiff had no history of psychiatric treatment and provided no indication that any impairment existed during the relevant period. Indeed, although Dr. Schneider opined that plaintiff might have difficulty dealing with work pressures in a work setting, he concluded that plaintiff could follow work instructions and deal with co-workers and work supervisors. Based in the record as a whole, the evidence was not sufficient to show that plaintiff had a psychiatric impairment which prevented him from performing his past relevant work on or before December 31, 1985.

As for plaintiff's alleged physical impairment, the ALJ considered the statements from Dr. Barbier and Dr. Shapiro that plaintiff could not work because he had been disabled since March 1979. As the Commissioner argues, these retrospective opinions are contradicted by the fact that plaintiff did work until November 14, 1980. Furthermore, plaintiff had advised Dr. Barbier on his initial visit in 1992, that he had a long history of back and neck pain which had recently recurred. As the Commissioner argues, a relapse or exacerbation of an impairment does not establish plaintiff's disability prior to December 31, 1985. *See Arnone,* 882 F.2d at 41. Furthermore, the ALJ was entitled to discount Dr. Barbier's opinion of disability because he is a chiropractor. *See Diaz v. Shalala,* 59 F.3d 307, 315 (2d Cir.1995).

The ALJ properly evaluated the retrospective opinion of Dr. Shapiro. The ALJ, in rejecting that opinion, reasoned that Dr. Shapiro did not begin treating plaintiff until August 1994, more than 13 years after plaintiff's injury and two years after plaintiff commenced chiropractic treatment. Additionally, Dr. Shapiro did not base his retroactive opinion of disability on any medical findings from the period between November 14, 1980 to December 31, 1985. Although he found limited range of motion and tenderness, there was no evidence of atrophy or spasm indicative of earlier injury. While diagnostic tests showed lumbosacral radiculopathy, there was no evidence as to when the condition arose. Moreover, Dr. Dutta found that neurological signs were normal, giving no indication of a back impairment on or before December 31, 1985. Although, Dr. Shapiro found positive clinical signs regarding the median nerve on the right side, plaintiff did not allege disability based on medical problems related to his arm.

### 2. *Subjective Evidence*

Notwithstanding plaintiff's testimony that between November 14, 1980 and December 31, 1985, he experienced pain and depression which severely limited his daily activities, the existence of a disability prior to the expiration of insured status must be established by adequate medical evidence. Absent objective medical evidence, plaintiff cannot sustain his burden of proof solely by conclusory statements that he was disabled at the crucial time. *Matullo v. Bowen,* 926 F.2d 240, 245 (3d Cir.1990); *Gonzalez v. Schweiker,* 540 F.Supp. 1256, 1258 (E.D.N.Y.1982). As the Commissioner argues, subjective symptomatology cannot, by itself, establish

disability; rather, plaintiff must demonstrate by medical and laboratory findings the existence of an underlying condition that can reasonably be expected to produce the symptomatology alleged. *See* 20 C.F.R. § 404.1529(b). If a medically determinable impairment exists, objective medical evidence, such as evidence of reduction of joint motion, muscle spasm, or sensory and motor disruption, must be considered in determining whether disability exists. *Id.* § 404.1529(c)(2). Where a claim of pain is not fully supported by the record, consideration is given to such factors as the frequency and duration of pain, precipitating and aggravating factors, the effect of medication, pain treatment, functional restrictions, and the claimant's daily activities. *Id.* § 404.1529(c)(3).

The ALJ properly discounted plaintiff's contention that he was disabled during the relevant period, based on plaintiff's failure to seek medical care for his back between November 14, 1980 and April 1992. Plaintiff's failure to seek medical treatment during the period at issue undercuts a finding of disability. *See Arnone,* 882 F.2d at 39. Moreover, plaintiff's activities (as described in his disability reports) and occasional work as a limousine driver somewhat undercut the alleged severity of his symptoms or at least suggested he could do some level of work activity despite his impairments. *See* 20 C.F.R. § 404.1529(c).

3. *Evidence Submitted to the Appeals Council*

The matter submitted by plaintiff to the Appeals Council did not contain medical records for the relevant period and were not sufficient to change the ALJ's decision. Accordingly, they were properly considered by the Commissioner. *See* 20 C.F.R. § 404.970(b).

Accordingly, the Court finds substantial evidence to support the Commissioner's decision that plaintiff is not disabled under the Act.

### III. *CONCLUSION*

For the above reasons, this Court finds that the Commissioner's decision is supported substantial evidence. Accordingly, the Commissioner's motion is granted. The Clerk of the Court is directed to enter judgment against plaintiff and to close the file in this matter.

SO ORDERED.