ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Represented by counsel, Plaintiff Sharon K. Pulos ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter *356 pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 10), and Plaintiff's reply (Dkt. 11). For the reasons discussed below, the Commissioner's motion (Dkt. 10) is granted and Plaintiff's motion (Dkt. 6) is denied.
BACKGROUND
Plaintiff protectively filed her application for DIB on August 25, 2014. (Dkt. 4 at 138, 216-17).[1] In her application, Plaintiff alleged disability beginning February 1, 2008. due to a brain tumor, liver transplant, diabetes, depression, acid reflux, and high cholesterol. (Id. at 211, 236, 240). Plaintiff's application was initially denied on November 14, 2014. (Id. at 152-55, 127-34). At Plaintiff's request, a video hearing was held before administrative law judge ("ALJ") Erik Eklund on April 18, 2017. (Id. at 73-126). The hearing was held in Lawrence, Massachusetts, and Plaintiff appeared with her attorney in Jamestown, New York. (Id. at 75). On May 10, 2017, the ALJ issued an unfavorable decision. (Id. at 135-46). Plaintiff requested Appeals Council review; her request was denied on January 16, 2018, making the ALJ's determination the Commissioner's final decision. (Id. at 6-11). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856. 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart , 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler , 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Parker v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe"
*357 within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. § 404.1520(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2013. (Dkt. 4 at 140). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since February 1, 2008, the alleged onset date, through December 31, 2013, the date last insured. (Id. ).
At step two, the ALJ found that Plaintiff had the following medically determinable impairments: "status post encephalopathy ; status post brain surgery ; status post liver transplant; osteoarthritis of the right knee; status post compression fracture of the thoracic spine; diabetes ; obesity ; depression; and anxiety." (Id. ). The ALJ further found that "[t]here is little evidence that these alleged impairments result in more than minimal, if any, limitation in the claimant's ability to perform work-related activities during the period at issue." (Id. ). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 146).
II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error
Plaintiff asks the Court to reverse the final decision of the Commissioner, arguing that that ALJ erred in performing the step two analysis, and improperly found that Plaintiff did not have a "severe impairment." (Dkt. 6-1 at 12). Plaintiff focuses on the ALJ's failure to find Plaintiff's cognitive and psychological impairments as severe.
*358 A. The Step Two Severity Standard
At step two of the disability analysis, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. § 404.1520(c). The Commissioner's Regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual work situations"; and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522(b).
"The claimant bears the burden of presenting evidence establishing severity." Taylor v. Astrue , 32 F.Supp.3d 253, 265 (N.D.N.Y. 2012), adopted , 32 F.Supp.3d 253 (N.D.N.Y. 2012). Step two's "severity" requirement is de minimis and is meant only to screen out the weakest of claims. Dixon v. Shalala , 54 F.3d 1019, 1030 (2d Cir. 1995). Despite this lenient standard, the " 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.' " Taylor , 32 F.Supp.3d at 265 (quoting Coleman v. Shalala , 895 F.Supp. 50, 53 (S.D.N.Y. 1995) ). Rather, "to be considered severe, an impairment or combination of impairments must cause 'more than minimal limitations in [a claimant's] ability to perform work-related functions.' " Windom v. Berryhill , No. 6:17-cv-06720-MAT, 2018 WL 4960491, at *3, 2018 U.S. Dist. LEXIS 176372 at *7 (W.D.N.Y. Oct. 14, 2018) (quoting Donahue v. Colvin , No. 6:17-CV-06838(MAT), 2018 WL 2354986, at *5, 2018 U.S. Dist. LEXIS 87554 at *15 (W.D.N.Y. May 24, 2018) ) (alteration in original).
B. The ALJ's Consideration of Plaintiff's Impairments
Plaintiff alleges disability due to liver surgery, brain surgery, encephalopathy, osteoarthritis of the right knee, compression fracture of the thoracic spine, diabetes, obesity, depression, and anxiety. (Dkt. 4 at 140; see also id. at 240). In his decision, the ALJ found that Plaintiff's medically determinable impairments could have been reasonably expected to produce Plaintiff's alleged symptoms. (Id. at 142). However, the ALJ explained that statements by Plaintiff and her husband concerning the intensity, persistence, and limiting effects of these symptoms were not consistent with the medical evidence and other evidence in the record. (Id. ).
The Court finds that the ALJ's conclusions regarding Plaintiff's impairments are supported by the evidence in the record. Beginning with Plaintiff's complaints of cognitive deficits, the record shows that Plaintiff underwent brain surgery in 2003 (prior to the claimed period of disability) to remove a tumor. (Id. at 274, 282). The record reveals that there was no recurrence, and a March 2007 CT-Scan revealed minimal softening or loss of brain tissue, and an otherwise unremarkable examination. (Id. at 503). Treatment notes from Paul Okunieff, M.D., in June 2007 note that he reviewed Plaintiff's MRI from that date and saw no new enhancing lesions, no other new pathology, and stable imaging changes. (Id. at 276). Dr. Okunieff also noted Plaintiff's main health problem was her cirrhosis. (Id. ). Plaintiff returned to work following her brain surgery, and worked until 2008. (Id. at 82).
*359 In 2011, Rajan Gulati, M.D., reported that Plaintiff was alert, oriented, and without evidence of hemiparesis. (Id. at 530). Dr. Gulati did not observe any obvious signs of anxiety or depression. (Id. ). A 2012 examination by Dr. Gulati revealed similar findings; his treatment notes explained that although Plaintiff is psychotic at times, that condition is "much better" when Plaintiff takes Ability. (Id. at 537). CT scans of Plaintiff's brain from January and June 2013 showed post-surgical changes, but were otherwise unremarkable. (Id. at 301, 587). In December 2014, Plaintiff's neurological system was assessed as "grossly intact," and she appeared alert, oriented, and in no apparent acute distress. (Id. at 625). Accordingly, the Court finds that the ALJ's conclusion that Plaintiff has not been significantly limited since her 2003 brain surgery is reasonable.
Plaintiff underwent a liver transplant in April 2008. (Id. at 397). Plaintiff initially experienced encephalopathy, decreased mobility, and agitation following the surgery, and was admitted to Strong Memorial Hospital. (Id. at 401-04). Plaintiff received Abilify to control her agitation and engaged in various forms of rehabilitation; the records note that Plaintiff needed minimal assistance with physical therapy, could follow commands and multi-step commands, and her cognition was improving. (Id. at 402). Plaintiff was discharged to Highlands of Brighton, for further cognitive rehabilitation. (Id. at 402-03). Plaintiff visited Dr. Gulati following her hospital stay in July 2008. (Id. at 466). Dr. Gulati noted that Plaintiff was "doing remarkably well. The swelling in the legs has gone away. The weight is also much less. She looks more alert. She is talking and making verbal communication." (Id. ). Dr. Gulati also noted that Plaintiff was "alert, oriented and there is not hemiparesis." (Id. ). At a visit on September 10, 2008, Dr. Gulati noted that Plaintiff "had a liver transplant and she is doing pretty well mentally." (Id. at 466). Treatment notes from follow-up visits in 2011 and 2012 showed that Plaintiff's recovery from liver surgery was "uncomplicated," and that liver functions were "pretty normal" and "stable." (Id. at 392-93, 537). In other words, the record shows that Plaintiff's liver transplant was successful and any issues arising from the transplant were controlled by medication and treatment.
There is very little evidence in the record relating to Plaintiff's right knee and spinal issues, and Plaintiff's argument focuses on her alleged cognitive and psychological impairments, rather than any physical impairments. (See Dkt. 6-1 at 12-18). An MRI from 2004 shows cervical spondylosis at the C5-C6 level (Dkt. 4 at 284); however, Plaintiff continued working until 2008 with this alleged impairment (id. at 82). An April 17, 2013 x-ray of Plaintiff's chest showed "compression fractures of the thoracic spine," with "no evidence of active parenchymal disease or failure." (Id. at 323). There is no evidence of ongoing treatment relating to Plaintiff's spinal issues. In 2007, Plaintiff suffered an injury to her right knee; an x-ray revealed "a large joint effusion with narrowing of the medical compartment of the knee joint," with "no evidence of fracture or dislocation." (Id. at 306). However, again, there is no evidence of ongoing treatment relating to Plaintiff's right knee pain. Further, there is nothing in the record suggesting that Plaintiff needed surgery, physical therapy, or any other type of intensive treatment to control her knee and spinal pain. See Dumas v. Schweiker , 712 F.2d 1545, 1553 (2d Cir. 1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say"). Accordingly, the ALJ's determination *360 that Plaintiff's knee and spinal pain did not constitute a "severe impairment" is supported by substantial evidence.
Further, the record reveals that Plaintiff's diabetes was well-controlled, and her glucose levels were within normal ranges. (Dkt. 4 at 395 (noting in December 2010 that "[Plaintiff] has good BP control and her glucose control is very good with occasional sugars going to 150...."); see also id. at 405, 409 (normal glucose level results in 2013 and 2014) ). In April 2012, Dr. Gulati noted that Plaintiff's diabetes was "more or less under control," and he encouraged Plaintiff to "walk more and try to eat ... properly." (Id. at 538). Further, in August 2014, Plaintiff's diabetic eye exam was essentially normal. (Id. at 411) ("Regarding diabetic eye checks, she has seen Dr. Shin in Rochester this year and everything was okay") ).
Plaintiff also reported that, despite her diabetic status and her doctor's instructions that she exercise and eat healthy, she enjoys eating unhealthy foods, such as cookies and cakes. (Id. at 78, 627). As noted by the ALJ in the written determination, although not the primary basis for the decision in Plaintiff's case, "[t]he claimant's attitude toward her choice of desserts demonstrates a possible unwillingness to follow treatment directives that are necessary to improve her condition." (Id. at 144). It was proper for the ALJ to consider Plaintiff's non-compliance with suggested treatment in assessing the credibility of her claims. See Lee v. Colvin , No. 13-CV-1151-JTC, 2015 WL 3505791, at *6, 2015 U.S. Dist. LEXIS 71883 at *16 (W.D.N.Y. June 3, 2015) (an ALJ is permitted to "consider plaintiff's noncompliance with treatment as a factor weighing against [her] credibility").
The ALJ also addressed Plaintiff's alleged impairment of obesity, in compliance with Social Security Ruling 02-1p. (Dkt. 4 at 144). While Plaintiff's medical record is replete with references to her being overweight, there is no evidence in the record, opinion or otherwise, showing that obesity has been a serious medical condition in the sense that it limits Plaintiffs ability to perform basic work activities. Accordingly, the ALJ did not err in finding that Plaintiff's obesity was not a severe impairment. Cf. Younes v. Colvin , CIVIL ACTION NO. 1:14-170, 2015 U.S. Dist. LEXIS 43990, at *14 (N.D.N.Y. Mar. 13, 2015) (finding no error in ALJ's failed to explicitly discuss the plaintiff's obesity because "no medical source identified [the plaintiff's] obesity as a contributing factor to her impairments"), adopted , 2015 WL 1524417, 2015 U.S. Dist. LEXIS 43471 (N.D.N.Y. Apr. 2, 2015).
In sum, and for the reasons discussed above, the Court finds that the ALJ's consideration of Plaintiff's impairments was thorough and well-supported by the record. The ALJ appropriately found that none of Plaintiff's impairments were severe, inasmuch as they did not significantly impact her ability to perform basic work activities.
C. Failure to Discuss Particular Evidence
Plaintiff argues extensively that the ALJ failed to address certain evidence relating to her cognitive and psychological impairments. (Dkt. 6-1 at 13-17). Specifically, Plaintiff points to a January 26, 2013 scan of Plaintiff's brain, due to mental status changes; a June 20, 2013 report indicating that Plaintiff was seen in Urgent Care following a fall into a glass coffee table; a December 1, 2011 note that Plaintiff relied on her spouse to answer questions about her medications and that Plaintiff has a caregiver three times per week; an August 12, 2014 note from Dr. Gulati that Plaintiff *361 has a complex case and that Plaintiff is disabled and not working; a February 17, 2011 note from Dr. Orloff discussing Plaintiff's history of semi-encephalopathy and personality changes, where a psychiatric examination showed somewhat poor (but adequate) judgment and lack of insight; and a January 18, 2012 note from Dr. Gulati that Plaintiff has diabetes and is addicted to nicotine gum, as well as that Plaintiff is functional but that she cannot be left alone, and that Plaintiff is psychotic at times. (Id. at 14-16).
"An ALJ need not recite every piece of evidence that contributed to [his] decision, so long as the record permits [the reviewing court] to glean the rationale of an ALJ's decision." Yeomas v. Berryhill , 305 F.Supp.3d 464, 467 (W.D.N.Y. 2018) (quoting Cichocki v. Astrue , 729 F.3d 172, 178 n.3 (2d Cir. 2013) ) (alterations in original). Here, it is clear from the written determination that the ALJ considered the above-mentioned evidence, even though it was not specifically discussed in the opinion. For example, the ALJ considered Plaintiff's balance issues. (See Dkt. 4 at 141 (discussing Plaintiff's testimony that her vision has decreased since her liver transplant in 2008, and she has trouble maintaining balance, attention, and concentration); id. at 142 (discussing testimony of Plaintiff's husband that she "has fallen several times, can only walk for short distances, and has intermittent episodes of dizziness," but that Plaintiff "has not had treatment for cognitive or mental problems or dizziness during the period at issue") ).
Further, the ALJ considered various reports and records relating to Plaintiff's mental status. (See id. at 142 (discussing Dr. Gulati's April 2011 report that the result of his neurological tests revealed that Plaintiff was alert, oriented, and without evidence of hemiparesis ); id. at 143 (discussing Plaintiff's June 2013 CT scan, which showed postoperative changes in the left temporal lobe but an otherwise unremarkable cerebral hemisphere, and explaining that these findings suggest that Plaintiff has not been significantly limited since her brain surgery ); id. at 143 (discussing follow-up treatment in April 2014 and December 2014, where Plaintiff's neurological system was intact, and she denied depression and anxiety); id. at 145 ("Mental status examinations have repeatedly exposed normal thought content, full orientation, and intact cognitive functions. Although the claimant's husband testified that the claimant has memory difficultly, there is no objective evidence to support his allegation."); id. (in the functional area of concentrating, persisting, or maintaining pace, Plaintiff has "mild limitations," and noting that "treatment notes fail to document any concerns on the part of treating health professionals concerning her mental status."); id. (discussing Plaintiff's ability to adapt and manage herself, because treatment notes reflect that Plaintiff has the ability to care for herself, has not required any recent impatient or emergency room care for mental impairments, and testified that she is not depressed) ).
Further, the ALJ discussed Plaintiff's physical limitations, as well as help she receives from others, including her husband. (Id. at 141 (discussing Plaintiff's testimony that she can perform personal, self-care functions, as well as sweep, mop, and vacuum, but that her husband cooks at times and that a home health aide comes to her home once a week to clean and/or cook); id. at 143 (discussing Dr. Gulati's February 2015 report, where Plaintiff stated that she cannot be left by herself, but is independent with taking care of herself) ). Likewise, the ALJ considered Plaintiff's addiction to nicotine. (See id. at 143 (discussing Dr. Gulati's February 2015 report *362 that Plaintiff's "main problem is addiction to nicotine gums") ). Similarly, the ALJ discussed the minimal limitations caused by Plaintiff's diabetes. (See id. at 144 (finding that while the medical evidence is consistent in outlining Plaintiff's subjective complaints of pain, it is also consistent in showing few objective signs to support those complaints, including blood glucose levels in 2011, 2013 and 2014, showing that Plaintiff's diabetes is well-controlled, and Plaintiff's February 2015 statement to her doctor that, despite her diabetic status, she was happy eating unhealthy foods) ). In other words, the ALJ clearly considered evidence of Plaintiff's cognitive and psychological impairments in reaching the disability determination. The fact that the ALJ did not draw the conclusions from this evidence that Plaintiff thinks he should have is no basis for remand. See Miller v. Colvin , No. 15-CV-6249P, 2016 WL 4478690, at *16, 2016 U.S. Dist. LEXIS 113990 at *53 (W.D.N.Y. Aug. 25, 2016) ("[The plaintiff] simply disagrees with the ALJ's conclusions; in essence, [she] invite[s] the court to re-weigh evidence and come to a different conclusion than did [the] ALJ. That invitation must be declined, since a reviewing court defers to the Commissioner's resolution of conflicting evidence.") (internal quotations and citations omitted).
D. Appeals Council Consideration of New Evidence
Following her administrative hearing, Plaintiff submitted a November 2017 neuropsychological examination report to the Appeals Council. (Dkt. 6-1 at 17). The Appeals Council addressed this evidence and determined that the report did not relate to the period of disability at issue, and therefore did not affect the decision as to whether Plaintiff was disabled beginning on or before December 31, 2013. (Dkt. 4 at 7). The November 2017 report is a part of the record on appeal. (See id. at 8-13, 20-25). Plaintiff refers to the November 2017 report in her motion papers, contending that it is further evidence that her impairments were indeed severe.
Although Plaintiff does not make this specific argument, the Court notes that the Appeals Council must consider "new" and "material" evidence if it "relates to the period on or before the date of the administrative law judge hearing decision" and there is "reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely based on timing. Pollard v. Halter , 377 F.3d 183, 193 (2d Cir. 2004). "For example, subsequent evidence of the severity of a claimant's condition may demonstrate that 'during the relevant time period, [the claimant's] condition was far more serious than previously thought.' " Newbury v. Astrue , 321 F. App'x 16, 18 n.2 (2d Cir. 2009) (quoting Pollard , 377 F.3d at 193 ) ). However, evidence that does not provide additional information about the claimant's functioning during the relevant time period, but instead relates to his or her functioning at some later point in time, need not be considered by the Appeals Council. See Vitale v. Apfel , 49 F.Supp.2d 137, 142 (E.D.N.Y. 1999) ("While the existence of a pre-existing disability can be proven by a retrospective opinion, such an opinion must refer clearly to the relevant period of disability and not simply express an opinion as to the claimant's current status").
The Court finds that the November 2017 report is not relevant to the period of disability. The November 2017 report was prepared by a consultative physician, Donna M. Czarnecki, Ph.D., over nine years after the alleged onset *363 date and almost four years following Plaintiff's date last insured. Dr. Czarnecki had not treated Plaintiff prior to the November 2017 report, and had no knowledge of Plaintiff's level of functioning during the period of disability. Further, Dr. Czarnecki assessed Plaintiff with dementia, unspecified, and recurrent major depressive disorder, in partial remission. (Id. at 15). The report notes that Plaintiff "demonstrated what appears to be broad decline" and that the cause of her symptoms could be a "recent vitamin B12 deficiency." (Id. at 16). In other words, the November 2017 report is a snap shot of Plaintiff's condition in November 2017, and does not clearly refer to the relevant period of disability.[2] To the contrary, the November 2017 report suggests a degenerative neurological condition, and is not a reliable portrait of Plaintiff's level of functioning during the relevant time period. See Carbee v. Comm'r of Soc. Sec. , No. 1:17-CV-0051 (GTS), 2018 WL 333516, at *6, 2018 U.S. Dist. LEXIS 3577 at *20-21 (N.D.N.Y. Jan. 9, 2018) (distinguishing Pollard and finding no error by Appeals Council, where the new records "concern[ed] a later period," and "[did] not strongly suggest that Plaintiff's conditions were far more serious than at the time of the ALJ's decision."). The decision by the Appeals Council that the November 2017 report was not relevant to the period at issue was proper.
CONCLUSION
For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

Although the November 2017 report notes that Plaintiff's husband reported that her condition has not significantly changed over the past nine years, this statement is not supported by any objective medical evidence in the report. (Dkt. 4 at 13). See Robinson v. Comm'r of Soc. Sec. , No. 1:16-CV-00648 (MAT), 2018 WL 3583236, at *4, 2018 U.S. Dist. LEXIS 125613 at *13 (W.D.N.Y. July 26, 2018) ("A claimant's subjective complaints are not transformed into relevant medical opinion simply because they are recorded by a treatment provider.").