**Joan COLEMAN, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendants.**

**No. 94 Civ. 3518 (DAB).**

United States District Court, S.D. New York.

July 31, 1995.

Charles E. Binder, Binder and Binder, Hauppauge, NY, for plaintiff.

Lorraine S. Novinski, Sp. Asst., Mary Jo White, New York City, for defendants.

## OPINION

BATTS, District Judge:

Joan Coleman ("Coleman") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) for judicial review of a final decision of the Secretary of Health and Human Services ("Secretary") denying her application for disability insurance benefits and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. § 401, et seq. Both parties have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the reasons set forth below, the decision of the Secretary is affirmed.

### Prior Proceedings

Coleman initially filed an application for Social Security Disability Insurance benefits and Supplemental Security Income on May 1, 1991. (Admin.Tr. at 71–4.) Coleman's concurrent claim was denied on October 18, 1991 and she requested reconsideration. (Admin.Tr. at 101–5.) The Secretary reconsidered Coleman's application but once again denied benefits. Coleman then requested a hearing before an administrative law judge ("ALJ"). A hearing was held on September 1, 1993. In a decision dated November 18, 1993 the ALJ found Coleman not disabled within the meaning of the Social Security Act, and therefore not entitled to benefits. (Admin.Tr. at 16–29.) Coleman then re-

quested that the Appeals Council review the hearing decision, (Admin.Tr. at 13); however, this request was denied. The Secretary's determination then became final and Coleman began this action seeking a reversal of the Secretary's decision, or in the alternative, a remand for a new hearing.

### Facts

Coleman was born on August 14, 1949 and has completed three years of college. She worked as a professional rock and roll singer from 1967 until March 1988 and also worked as a composer and producer. (Admin.Tr. at 44–5.) She appeared in and did "voice-over" for more than 1500 commercials, was a recording artist for more than five years, and was executive president of two companies. After working as a singer, Coleman attempted to work as a receptionist for a couple of months but was unable to sustain employment. (Admin.Tr. at 45.) By July 1, 1988, Coleman stopped working full-time due to a host of complaints including extreme fatigue, loss of balance, migraines, vertigo, hearing loss, respiratory difficulty, anxiety, insomnia, depression, disorientation, palpitations, intermittent nausea, chest pain, low grade fevers, facial pain and swelling, chronic sinusitis, chronic tracheobronchitis and laryngitis, and pressure. (Admin.Tr. at 129.) In addition to these physical ailments, Coleman suffers from depression. (Admin.Tr. at 334.)

Coleman's application for disability and supplemental security income benefits is based on the claim that both her physical and mental ailments impede her from working. The record is replete with references to Coleman's visits to physicians and psychiatrists for treatment of her various conditions. (Admin.Tr. at 147–254; 335–460.) With regard to her physical ailments, Coleman appears to have been under the care of a single physician, Dr. Scott Kessler, from 1987 to 1991. During this period, her condition varied from one requiring bed rest and restrictions on her activities to one in which Coleman was completely disabled and unable to work or travel without suffering numerous symptoms. (Admin.Tr. at 162.) As indicated by Dr. Kessler, most of Coleman's medical problems were the result of exposure to vola-

tile irritants and noxious fumes in her apartment. (Admin.Tr. at 166–67.)

In a statement dated June 6, 1991, which was completed in connection with her claim of disability, Dr. Kessler indicated that despite Coleman's various complaints, he could not report any clinical or laboratory findings. He also noted that it was difficult to describe Coleman's limitations because of the wide variation in the frequency and severity of her symptoms. (Admin.Tr. at 159.) In a statement completed on October 16, 1991, Dr. Kessler indicated once again that he was unable to determine Coleman's ability to sit, stand, and walk because all of the objective medical tests he had performed did not "confirm" any disabling symptoms. (Admin.Tr. at 243.) In addition, in a letter to Coleman's attorney dated May 19, 1992, the physician stated that his February 21, 1991 examination of the Plaintiff had been normal. (Admin.Tr. at 295–96.)

During the period from December 1989 to May 1991, Coleman also made several visits to emergency rooms for various ailments. (Pl.'s Mem. at 7–8.) These visits either resulted in treatment for minor conditions, or, following appropriate tests, no treatment at all. (Def.'s Mem. at 6–7.) Further, a July 26, 1991 examination by Dr. A. DeLeon, a Social Security consult, indicated no abnormal findings. (Admin. Tr. at 186.)

With respect to Coleman's mental health, it is the opinion of Coleman's personal psychiatrist, Dr. Richard Lacy, that events experienced by Coleman beginning with an alleged rape in 1988 coupled with exposure to noxious irritants in her apartment eventually led to her mental illness. (Admin.Tr. at 329.) Over the next few years her mental condition worsened and she became suicidal, paranoid, hopeless, and experienced feelings of worthlessness. (Admin.Tr. at 330.) These feelings contributed in part to her inability to seek treatment, and it is for this reason that Coleman did not come under the care of a psychiatrist until July 1991 when she suffered acute suicidal ideation and uncontrollable outbursts. (Admin.Tr. at 330–31.) An examination at that time by Dr. Lacy indicated that she was "incapable of employment." (Admin.Tr. at 253.) An examination on August 3, 1991 by Dr. Richard King, a Social Security consult, however, resulted in a diagnosis that Coleman was anxious and depressed to a moderate degree, but nevertheless able to perform the routine activities of daily living. (Admin.Tr. at 195.) A report by Dr. Lacy completed in September 1993 indicated that Coleman was responding well to treatment with weekly psychotherapy and medication. (Admin.Tr. at 329.) The final statement in the record from Dr. Lacy was that Coleman was to continue psychiatric treatment and that her diagnosis was "major depression, partial remission." (Admin.Tr. at 334.)

### Discussion

A claimant is entitled to disability benefits under the Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of such severity that the person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The presence of an impairment is thus not in and of itself disabling within the meaning of the Act. *Murphy v. Secretary of Health and Human Servs.,* 872 F.Supp. 1153, 1155 (E.D.N.Y. 1994). *See also Spears v. Heckler,* 625 F.Supp. 208, 210 (S.D.N.Y.1985).

The Secretary has promulgated regulations establishing a framework in which to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520 and 416.920. Essentially, a five step analysis of the claimant's alleged disability is to be made.

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant

has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). The claimant bears the burden of proof as to the first four steps and the Secretary bears the burden of proof as to the last step. *Bowen v. Yuckert,* 482 U.S. 137, 146, 107 S.Ct. 2287, 2293–94, 96 L.Ed.2d 119 (1987).

■ A district court reviewing a denial of benefits has a limited role. The court may not determine *de novo* whether the claimant is actually disabled. Rather, the court must affirm the Secretary's final determinations so long as they are supported by substantial evidence in the factual record and are not the product of legal error. 42 U.S.C. § 405(g). *See also Dumas v. Schweiker,* 712 F.2d 1545, 1550 (2d Cir.1983) Substantial evidence means evidence that " '. . . a reasonable mind might accept as adequate to support a conclusion. . . .' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (further citations omitted). Moreover, the Secretary's determination is afforded "considerable deference" and the reviewing court should not substitute "its own judgment for that of the Secretary, even if it might have justifiably reached a different result upon a *de novo* review." *Valente v. Secretary of Health and Human Services,*

733 F.2d 1037, 1041 (2d Cir.1984). As the Second Circuit has stated:

> Congress has instructed us that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive. We would be derelict in our duties if we simply paid lip service to this rule, while shaping our holding to conform to our own interpretation of the evidence.

*Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982), *cert. denied,* 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983).

■ This Court has reviewed the decision of the ALJ and concludes that the ALJ correctly followed the procedure set forth by the Secretary in reviewing Coleman's claim. Moreover, there is sufficient evidence in the record to support the ALJ's conclusion that Coleman was not disabled within the meaning of the Act.

In evaluating Coleman's claim, the ALJ first found that Coleman was not engaged in substantial gainful activity. Indeed, it is undisputed that Coleman has not worked since July 1988. The ALJ next considered Coleman's ailments and found that Coleman has a "severe" respiratory and allergic impairment, and a "severe" mental impairment. The ALJ concluded, however, that these impairments did not meet or equal in severity any of the impairments listed in the Regulations. As a result, Coleman was not entitled to an automatic finding of disability.

The ALJ's conclusion that Coleman's impairments did not meet or equal any of the impairments listed in the Regulations was supported by substantial medical evidence. Coleman's personal physician indicated that objective tests did not confirm her symptoms, and he was unable to verify the extent of any disability. His December 27, 1990, treatment notes reflect only minor complaints, such as a sore throat and swollen glands. In addition, Dr. Kessler's February 22, 1991, physical examination of Coleman produced "unremarkable" findings. Coleman argues, nonetheless, that Dr. Kessler's January 1, 1991, and March 1, 1991, statements of total disability warrant a reversal of the ALJ's findings. Her argument, however, is without merit since these statements are di-

rectly contradicted by Dr. Kessler's own treatment notes.

Further, while Coleman's psychiatrist acknowledged that Coleman was suffering from major depression, he also indicated that she was responding well to treatment and was in remission. In addition, when asked his medical opinion about Coleman's ability to do work related mental activities, Dr. Lacy identified no significant limitations. (Admin.Tr. at 237.) These findings were confirmed in examinations by Social Security consults. Thus, while the record indicates that Coleman has had numerous and varied ailments, they are insufficient to support her claim of disability given the medical evidence in the record. As the ALJ noted, "[a] need for continued treatment and a potential for decomposition, do not mean that the person is excluded from the possibility of work...." (Admin.Tr. at 23.)

Moreover, "without any real medical substantiation, [such as] laboratory or other diagnostic testing," to support Coleman's claim of disability, the ALJ could not conclude that Coleman's ailments equalled any of the disabling impairments in the Regulations. (Admin.Tr. at 23.) Consequently, this Court does not find that the ALJ's determination that Coleman's symptoms did not meet or equal any of the impairments in the Regulations legally erroneous or unsupported by substantial evidence.

At the fourth step of the sequential evaluation process, the ALJ concluded that Coleman retained "residual functional capacity for medium work activity, in a not highly polluted environment," and that she was able to do her past relevant professional singer type work.[1] (Admin.Tr. at 23.) As the regulations require, the ALJ properly took into account Coleman's age, education, and past work experience in deciding that she was able to return to her previous work. In light of the medical evidence Coleman presented and testimony in the record that Coleman had continued to practice singing during periods of her claimed disability, this Court does not find that the ALJ's conclusion was unsupported by substantial evidence.

Coleman also argues that the ALJ's decision should be reversed because he concluded that her testimony was not credible. The ALJ based this finding on inconsistencies between Coleman's testimony and other evidence in the record, and specifically cites Coleman's testimony concerning two alleged rape episodes as examples of her lack of credibility. Although Coleman testified to both incidents at the hearing, Coleman never reported either rape to the police and copies of criminal court papers against one of the alleged attackers make no mention of rape or sexual assault. Coleman's testimony about the identity of the attackers, as well as the location of the rapes, also contradicts the evidence in the record. In addition, Coleman's testimony concerning her psychiatric treatment was also contradictory. Coleman testified that she continued her treatment, but the record indicates that it had been terminated and her case closed at the end of June 1993. In short, as the ALJ noted, Coleman's testimony was "replete with inconsistencies." (Admin.Tr. at 20.) Based on the record, this Court does not find the ALJ's conclusion unsupported by substantial evidence.

## Conclusion

In sum, a careful examination of the entire record shows that Coleman received a "full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the act...." *Bluvband v. Heckler,* 730 F.2d 886, 892 (2d Cir.1984). The ALJ's decision was based on the correct legal standard and supported by substantial evidence. Accordingly, the Secretary's determination is affirmed, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion is granted.

IT IS SO ORDERED.

1. Coleman's argument that the Secretary's decision should be reversed because the ALJ incorrectly failed to hear testimony from a vocational expert is without merit. The Secretary denied Coleman's claim at Step 4 of the evaluation process. *Bapp v. Bowen,* 802 F.2d 601, 605–06 (2d Cir.1986), is therefore inapplicable.