ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Represented by counsel, Plaintiff Barbara Jean Smith ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 11; Dkt. 14), and Plaintiff's reply (Dkt. 16). For the reasons discussed below, the Commissioner's motion (Dkt. 14) is granted and Plaintiff's motion (Dkt. 11) is denied.
BACKGROUND
Plaintiff protectively filed her application for DIB on December 9, 2013. (Dkt. 8-2 at 40; Dkt. 8-5 at 2).[2] Thereafter, Plaintiff protectively filed an application for SSI on February 7, 2014. (Dkt. 8-2 at 40). In her applications, Plaintiff alleged disability beginning December 1, 2013, due to post-traumatic stress disorder, chronic depression, and panic disorder. (Dkt. 8-2 at 40;
*274 Dkt. 8-3 at 2). Plaintiff's applications were initially denied on February 5, 2014. (Dkt. 8-2 at 40; Dkt. 8-4 at 4-15). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Michael W. Devlin in Rochester, New York, on December 15, 2015. (Dkt. 8-2 at 40, 57-84). On February 22, 2016, the ALJ issued an unfavorable decision. (Id. at 37-52). Plaintiff requested Appeals Council review; her request was denied on May 23, 2017, making the ALJ's determination the Commissioner's final decision. (Id. at 2-5). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Bowen v. City of New York, 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. §§ 404.1520(e), 416.920(e).
*275 The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2017. (Dkt. 8-2 at 42). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since December 1, 2013, the alleged onset date. (Id. ).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of left hip pain, hypothyroidism, lymphedema, persistent depressive disorder, panic disorder without agoraphobia, and post-traumatic stress disorder. (Id. ). The ALJ further found that Plaintiff's medically determinable impairments of gastro esophageal reflux disease, acne, and sleep apnea were non-severe. (Id. at 42-43).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. at 43-44). The ALJ particularly considered the criteria of Listings 1.02, 12.04, and 12.06 in reaching his conclusion.
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the additional limitations that Plaintiff:
is able to occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk up to two hours in an eight hour day; sit about six hours in an eight hour day; occasionally push and/or pull 10 pounds; occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders[,] ropes[,] [or] scaffolds. [Plaintiff] can understand, remember, and carry out simple instructions and tasks; occasionally interact with co-workers and supervisors; little to no contact with the general public; [Plaintiff] is able to work in a low stress work environment (i.e. no supervisory duties, no independent decision-making required, no strict production quotas, minimal changes in work routine and processes, etc.); and is able to consistently maintain concentration and focus for up to two hours at a time.
(Id. at 44-45). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Id. at 50).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of addresser and table worker. ( *276 Id. at 51). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 51-52).
II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error
Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing: (1) the ALJ erred at steps two and three of the disability analysis, because he failed to consider evidence of some of Plaintiff's impairments; (2) the ALJ improperly assessed opinion evidence in the record; and (3) the Appeals Council failed to consider new and material evidence submitted by Plaintiff. (Dkt. 11-1 at 19-30). The Court has considered each of these arguments and, for the reasons discussed below, finds them to be without merit.
A. Step Two and Three Determinations
Plaintiff contends that the ALJ's step two and step three determinations were improper, because he failed to consider evidence regarding some of her impairments, principally issues relating to her anxiety and personality disorders. (Dkt. 11-1 at 19). Plaintiff also contends more generally that the ALJ failed to consider her "chronic and progressive conditions." (Id. ). Plaintiff also offers a laundry list of over 15 impairments from which she allegedly suffers and which the ALJ purportedly failed to consider, offering little substantive argument in support of the ALJ's purported error. (Id. at 19-20 (Plaintiff suffers from "anxiety, personality disorder(s), chronic and progressive conditions"; "anxiety, Axis II cluster traits, borderline, chronic anxiety and depression, PTSD, and chronic hip and back pain"; "lymphedema, hearing loss, thyroid, OSA, obesity, underlying hypoventilation or cardiopulmonary disease, epicondylitis, and long QT syndrome") ). For the reasons set forth below, the Court finds that Plaintiff's argument regarding the ALJ's step two and three analysis is without merit.
1. The Step Two Severity Standard
At step two of the disability analysis, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. § 404.1520(c). The Commissioner's Regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual work situations"; and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522(b).
"The claimant bears the burden of presenting evidence establishing severity." Taylor v. Astrue, 32 F.Supp.3d 253, 265 (N.D.N.Y. 2012), adopted, 32 F.Supp.3d 253 (N.D.N.Y. 2012). Step two's "severity" requirement is de minimis and is meant only to screen out the weakest of claims. Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). However, despite this lenient standard, the " 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.' " Taylor, 32 F.Supp.3d at 265 (quoting Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y. 1995) ). Rather, "to be considered severe, an impairment or combination of impairments must cause 'more than *277 minimal limitations in [a claimant's] ability to perform work-related functions.' " Windom v. Berryhill, No. 6:17-cv-06720-MAT, 2018 WL 4960491, at *3, 2018 U.S. Dist. LEXIS 176372, at *7 (W.D.N.Y. Oct. 14, 2018) (quoting Donahue v. Colvin , No. 6:17-CV-06838(MAT), 2018 WL 2354986, at *5, 2018 U.S. Dist. LEXIS 87554, at *15 (W.D.N.Y. May 24, 2018) ) (alteration in original).
2. The ALJ's Consideration of Plaintiffs Impairments
At step two of his analysis, the ALJ in this case considered Plaintiff's mental impairments and determined that her depressive disorder, panic disorder, and post-traumatic stress disorder qualified as severe. (Dkt. 8-2 at 42). He also found that her chronic conditions of left hip pain, hypothyroidism, and lymphedema were severe. (Id. ). At step three, the ALJ considered the severity of Plaintiff's physical impairments in the context of Listing 1.02 (requiring evidence of anatomical deformity and chronic joint pain and stiffness), and considered her mental impairments in the context of Listings 12.04 and 12.06, under both the "paragraph B" and "paragraph C" criteria. (Id. at 43). In assessing whether Plaintiff's impairments satisfied the paragraph B and C criteria, the ALJ discussed the assessment of Kavitha Finnity, Ph.D., who opined that Plaintiff was moderately limited in her ability to relate to others and deal with stress, as well as the state consultant's opinion that Plaintiff was moderately limited in working with others and responding to changes in the work setting. (Id. at 43-44). The ALJ further considered the opinions of Dr. Finnity and the state consultant in determining that Plaintiff has moderate difficulties in concentration, persistence, or pace. (Id. at 44). Specifically, while both medical sources found that Plaintiff could understand, remember, and carry out simple instructions, Plaintiff had some limitations in maintaining a regular schedule, maintaining attention and concentration for long periods, sustaining an ordinary routine, and performing at a consistent pace. (Id. ).
Although Plaintiff's anxiety and personality disorders are not explicitly discussed at step three, the record indicates that the ALJ considered evidence of these impairments. Specifically, the ALJ discussed Plaintiff's limitations in relating to others, dealing with stress, and responding to changes in the work setting - all of which are manifestations of Plaintiff's anxiety and personality disorder. "There is no requirement that the language used by the ALJ ... mirror the terminology used by Plaintiff's physicians, so long as the ALJ properly analyzes Plaintiff's medically determinable impairments." Guerra v. Comm'r of Soc. Sec. , No. 1:16-CV-00991 (MAT), 2018 WL 3751292, at *3, 2018 U.S. Dist. LEXIS 133137, at *8 (W.D.N.Y. Aug. 7, 2018).
The Court finds that Plaintiff has not shown reversible error by the ALJ at either step two or step three. As a threshold matter, Plaintiff offers very little argument in support of her contention that her myriad of claimed physical and mental impairments are medically determinable or qualify as severe. Accordingly, for the majority of these claimed impairments, Plaintiff has failed to identify any evidence to support the conclusion that the ALJ's step two and three analysis was erroneous. See Howard v. Comm'r of Soc. Sec. , 203 F.Supp.3d 282, 296 (W.D.N.Y. 2016) ("[T]he mere presence of a disease or impairment, or establishing a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe") (internal quotation omitted).
*278 To the extent the ALJ did not specifically consider the criteria for certain claimed impairments at steps two and three of the disability analysis, given the thorough discussion of Plaintiff's history of mental impairments in the written determination, any error would be harmless. As explained in Guerra :
At step two, the ALJ is required to consider whether a claimant's medically determinable impairments are severe. Notably, "[i]t is the claimant's burden to show at step two that she has a severe impairment." Rye v. Colvin, No. 2:14-CV-170, 2016 U.S. Dist. LEXIS 18774, 2016 WL 632242, at *3 (D. Vt. Feb. 17, 2016) (internal quotation omitted). A step two error is not reversible and does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe....
Moreover, "[c]ourts have developed a specialized variant of harmless-error analysis with respect to Step 2 severity errors in social security proceedings.... [W]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non severe, an error in failing to identify all severe impairments at Step 2 is harmless." Snyder v. Colvin, No. 5:13-CV-585 GLS/ESH, 2014 U.S. Dist. LEXIS 92541, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014) ; see also Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (step two error was harmless where all of the claimant's conditions "were considered during the subsequent steps"). "Specifically, when functional effects of impairments erroneously determined to be non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error." Snyder, 2014 U.S. Dist. LEXIS 92541, 2014 WL 3107962 at *5.
Guerra, 2018 WL 3751292, at *2-3, 2018 U.S. Dist. LEXIS 133137, at *6 ; see also Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (where ALJ excluded the plaintiff's anxiety disorder and panic disorder from his review, finding harmless error because the ALJ identified other severe impairments and proceeded with the subsequent steps, in which the ALJ specifically considered the plaintiff's anxiety and panic attacks); Panfil v. Comm'r of Soc. Sec. , No. 16-CV-947-MJR, 2018 WL 4610531, at *4, 2018 LEXIS 165356, at *13 (W.D.N.Y. Sept. 26, 2018) ("To the extent the ALJ erred in not including occipital neuralgia, myofascial pain, cervicalgia, and personality disorder in his list of severe impairments, the error was harmless because the ALJ proceeded beyond step two and considered these impairments at the remaining steps.").
Contrary to Plaintiff's contention, the written determination contains a thorough and lengthy discussion of Plaintiff's mental impairments, including her mood disorder (see id. at 47 ("The claimant has alleged that she is unable to work due to symptoms related to a mood disorder ... [she] has a history of partial mental health hospitalizations from 2000-2010") ); PTSD (see id. ("The claimant has complained of symptoms including ... nightmares and flashbacks of trauma, and feelings of paranoia") ); treatment for anxiety (see id. (noting that Plaintiff is "easily overwhelmed and sensitive to pressure," and that treatment focused on relaxation exercises to "lower her anxiety and calm her racing thoughts") ); and her ability to relate to others and deal with stress (see id. (in January 2014, Dr. Finnity "concluded that *279 [Plaintiff] was mildly limited in her ability to maintain a regular schedule and moderately limited in her ability to relate with others and deal with stress") ). Accordingly, to the extent the ALJ failed to consider certain mental health impairments at steps two and three, any such error was harmless.
B. Assessment of Opinion Evidence
Plaintiff's next argument is that the ALJ improperly assessed opinion evidence in the record. (Dkt. 11-1 at 22). Although she contends that "multiple treating doctors" found more restrictions than assessed by the ALJ, Plaintiff does not identify specifically which opinion the ALJ allegedly improperly weighed, other than the opinion of Dr. Evans. (Id. at 24-25).
For claims filed before March 27, 2017, an ALJ is required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:
(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.
Id. "An ALJ does not have to explicitly walk through these factors, so long as the Court can conclude that the ALJ applied the substance of the treating physician rule[.]" Scitney v. Colvin, 41 F.Supp.3d 289, 301 (W.D.N.Y. 2014) (internal quotation omitted).
Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527 (c)(2) ; see also Harris v. Colvin , 149 F.Supp.3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons' " for the weight given to a treating source opinion." (quoting Halloran, 362 F.3d at 32 ) ). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific...." Harris, 149 F.Supp.3d at 441 (internal quotation marks omitted).
For all opinions of "other sources," such as a physician assistant, social worker, or vocational rehabilitation counselor, the ALJ must consider various factors, including:
(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the ... physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.
*280 Pike v. Colvin, No. 14-CV-159-JTC, 2015 WL 1280484, at *5, 2015 U.S. Dist. LEXIS 35143, at *11 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted).
The Court finds that the ALJ properly weighed the opinion evidence and assessed an RFC that is supported by the record. The written determination contains an explanation of the opinion evidence in the record, including opinions offered by: Dr. Eurenius, an internal medical consultant; Dr. Seok, the state medical consultant; Lara Evans, M.D., Plaintiff's treating physician; Ms. Bergen, Plaintiff's physician assistant; Ms. Weingart, Plaintiff's treating therapist; Dr. Finnity, a consultative psychologist; and the state psychological consultant. (Dkt. 8-2 at 46-49). Of these many opinions, only the opinion of Dr. Evans, Plaintiff's treating physician, is entitled to special deference.
Plaintiff began treating with Dr. Evans in February 2002. (Dkt. 8-7 at 422). In June 2014, Dr. Evans completed a Monroe County Department of Human Services Assessment. (Id. ). Dr. Evans noted that Plaintiff was able to use public transportation, her general appearance and gait were normal, and she was able to participate in activities, including work, education, and training, for up to 40 hours per week, with reasonable accommodations. (Id. at 422-24). Dr. Evans recommended that Plaintiff work in a job with a flexible schedule, so that she could attend doctor's appointments, and opined that Plaintiff should avoid working conditions that involve "prolonged standing," and should be able to sit, when needed. (Id. at 424). An examination revealed normal findings, other than some hearing loss and lymphedema. (Id. at 425). Dr. Evans opined that Plaintiff had no evidence of limitations for sitting, seeing, hearing, and speaking. (Id. ). With regard to walking, standing, pushing, pulling, bending, lifting, and carrying, Plaintiff was moderately limited (between two to four hours in an eight-hour workday). (Id. ).
The ALJ assigned "significant weight" to the opinion of Dr. Evans, based on her treatment relationship with Plaintiff, her regular contact with Plaintiff, and also the consistency of the opinion with her examinations of Plaintiff. (Dkt. 8-2 at 49). Importantly, while the ALJ did not expressly state that he was affording Dr. Evans' opinion controlling weight, the assessed RFC is entirely consistent Dr. Evans' opinion. The ALJ's finding that Plaintiff is capable of occasionally lifting and carrying ten pounds, standing and/or walking for up to two hours in an eight-hour day, and occasionally pushing and/or pulling ten pounds, is consistent with Dr. Evans' assessment that Plaintiff was moderately limited in walking, standing, pushing, pulling, bending, lifting, and carrying. Similarly, the ALJ's finding that Plaintiff is capable of sitting about six hours in an eight-hour day is consistent with Dr. Evans' assessment that Plaintiff has no limitations for sitting. The assessed limitations for walking and standing also are consistent with Dr. Evans' opinion that Plaintiff avoid prolonged standing, and be able to sit, when needed.[3] As such, the Court finds no error or violation of the treating physician *281 rule in the ALJ's consideration of Dr. Evans' opinion.
Plaintiff has not identified specifically which portions of the remaining opinion evidence in the record she contends were improperly weighed by the ALJ. Rather, she argues only generally that "[t]he ALJ failed to properly evaluate medical and other opinions, and selectively used his own lay opinion in RFC findings." (Dkt. 11-1 at 22). Despite Plaintiff's failure to particularize her arguments, the Court has reviewed the opinion evidence in the record and concludes that it was properly assessed by the ALJ. For example, the ALJ explained why he failed to adopt the opinions of certain sources, including opinions offered by Ms. Bergen and Ms. Weingart. Ms. Bergen opined in November 2014 that Plaintiff was unable to work for six to twelve months, and found that Plaintiff was "very limited" (meaning she could perform these tasks for only one to two hours) in her ability to sit, stand, walk, push, pull, bend, lift, and carry. (See Dkt. 8-7 at 434-37). The ALJ noted that these limitations conflicted with the opinion of Dr. Evans (Dkt. 8-2 at 46) and assigned the opinion "some weight" (id. at 48). The ALJ then elaborated on his reasoning for not adopting Ms. Bergan's opinion. (See id. at 49 (Ms. Bergan's "assessment indicates significantly more limitation than the assessment completed by treating physician, Dr. Evans. The treatment records do not support the extreme limitations assessed by Ms. Bergan. Particularly, there is no indication of any exacerbation of symptoms or more severe findings on examination in the treatment notes that supports the more limited functional assessment provided by Ms. Bergen").
The Court has reviewed the opinion evidence offered by both Dr. Evans and Ms. Bergen, and finds that the ALJ's weighing of these opinions was proper. See 20 C.F.R. § 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources"); see also Brush v. Berryhill, 294 F.Supp.3d 241, 264 (S.D.N.Y. 2018) (ALJ's finding of no episodes of decompensation was "supported by extensive treatment notes from [the plaintiff's] treating and examining psychiatrists that do not document a hospitalization or other acute exacerbation of her symptoms"); Blasco v. Comm'r of Soc. Sec. , No. 5:13-cv-576 (GLS), 2014 WL 3778997, at *5 n.9, 2014 U.S. Dist. LEXIS 104308, at *17 n.9 (N.D.N.Y. July 31, 2014) ("[T]he ALJ's explanation that the restrictive opinion is inconsistent both internally, and with the other evidence of record, is a sufficient basis for discounting the opinion of an 'other source' as well as that of an 'acceptable medical source.' ") (citations omitted).
The ALJ also addressed opinion evidence offered by Ms. Weingart, including her June 2014 opinion that Plaintiff had a GAF of 45, was unable to participate in any activities other than treatment for six months, and that Plaintiff was moderately limited in her ability to follow, understand, and remember simple instructions, perform simple and complex tasks independently, maintain attention and concentration for rote tasks, regularly attend to a routine and maintain a schedule, and perform low stress and simple tasks. (Dkt. 8-2 at 48; see also Dkt. 8-7 at 393-96). The ALJ noted that these opinions conflicted with Ms. Weingart's treatment notes, which showed benign and unremarkable mental status examinations, as well as general improvement in Plaintiff's symptoms. (Dkt. 8-2 at 48). The ALJ pointed to several specific exhibits in the record where Ms. Weingart's treatment notes conflicted with her June 2014 opinion regarding Plaintiff's mental functioning. (Id. ).
The ALJ also discussed Ms. Weingart's November 2014 assessment, which showed *282 improvement in Plaintiff's condition, including: a GAF of 55; normal ability to follow, understand, and remember simple instructions, regularly attend to a routine and maintain a schedule, and perform low stress and simple tasks; and moderate limitations in her ability to perform simple and complex tasks independently, and maintain attention and concentration for rote tasks. Despite these improvements in Plaintiff's mental functioning, Ms. Weingart again found that Plaintiff was unable to participate in any activities, other than treatment, for six months. (Dkt. 8-2 at 48; see also Dkt. 8-7 at 430-33).
The ALJ assigned the opinions offered by Ms. Weingart "some weight," based on her treatment relationship with Plaintiff, but also noted that her opinion was inconsistent with her benign findings on most of her mental status examinations, including more recent examinations from July 2014. (Dkt. 8-2 at 49; see, e.g. , Dkt. 8-8 at 12-13, 15, 18-19). The Court has reviewed the opinion evidence offered by Ms. Weingart, and finds that the ALJ's weighing of her opinion was proper, particularly in light of Ms. Weingart's normal mental status examinations, and because her opinion was not entitled to controlling weight. See Coleman v. Comm'r of Soc. Sec. , 335 F.Supp.3d 389, 398 (W.D.N.Y. 2018) (ALJ may discount an opinion when it is internally inconsistent); Conlin v. Colvin, 111 F.Supp.3d 376, 386 (W.D.N.Y. 2015) (social worker is not an acceptable medical source).
To the extent Plaintiff contends that the ALJ failed to discuss opinion evidence offered by Rhondalynn Hall, a vocational counselor (see Dkt. 16 at 5), any such error was harmless. The records from Ms. Hall make up seven pages in the over 1300-page record before the Court. The Court has reviewed the records from Ms. Hall (see Dkt. 8-6 at 47-53) and finds that they do not contain any information inconsistent with the assessed RFC. While Ms. Hall found that Plaintiff met "significantly disabled criteria" (id. at 51), she also noted that Plaintiff was currently working in the same position since 2011 (id. at 48). The only functional limitations assessed in the records include that Plaintiff: is unable to work beyond scheduled hours; cannot tolerate high stress environments and situations; has high anxiety, which triggers paranoia, anger, emotional meltdown, and loss of focus; her concentration is impacted by her depression; needs to avoid negative supervision; and works well in an independent environment. (Id. at 53). These limitations are consistent with the assessed RFC, including the limitations for concentration, working in a low-stress environment, and limited interaction with others. In other words, the functional limitations assessed by Ms. Hall were not significantly more favorable to Plaintiff than the other opinion evidence in the record. See Zabala v. Astrue, 595 F.3d 402,409 (2d Cir. 2010) (an error in failing to consider evidence "requires remand to the ALJ for consideration of the improperly excluded evidence, at least where the unconsidered evidence is significantly more favorable to the claimant than the evidence considered"). Coupled with the fact that the record contains several other sources of opinion evidence, and that the functional limitations assessed by Ms. Hall were not entitled to any special weight, see Metz v. Astrue , No. 1:06-CV-1509 (FJS/DRH), 2010 WL 2243343, at *16, 2010 U.S. Dist. LEXIS 53628, at *48 (N.D.N.Y. Apr. 21, 2010) (employment specialist is not an acceptable medical source), adopted , 2010 WL 2243347, 2010 U.S. Dist. LEXIS 53625 (N.D.N.Y. May 31, 2010), the ALJ's failure to expressly discuss this opinion does not necessitate remand. See Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of *283 evidence that contributed to the decision, so long as the record permits [the Court] to glean the rationale of an ALJ's decision.") (quotation omitted).
In sum, both the mental and physical RFC findings are adequately supported by the medical opinion evidence of record. As explained above, Dr. Evans' assessment directly supports the ALJ's assessment of Plaintiff's physical limitations. Further, the mental limitations included in the RFC finding, including that Plaintiff can understand, remember, and carry out simple instructions, can occasionally interact with co-workers and supervisors, can have little to no contact with the general public, can work in a low stress environment, and can maintain concentration and focus for up to two hours at a time, are supported by the opinion of Dr. Finnity (see Dkt. 8-2 at 47 (discussing Dr. Finnity's observation that Plaintiff had intact concentration, her opinion that Plaintiff had no limitations in her ability to follow and understand simple directions, perform simple tasks, maintain attention and concentration, learn new tasks, perform complex tasks, or make appropriate decisions, and her opinion that Plaintiff was mildly limited in her ability to maintain a regular schedule and moderately limited in her ability to relate with others and deal with stress) ), as well as the opinion of the state psychological consultant (id. at 48 (discussing opinion of state psychological consultant that Plaintiff was not significantly limited in her ability to understand, remember and carry out short and simple instructions, and make simple work-related decisions, was moderately limited in her ability to maintain attention and concentration for extended periods, perform activities within a schedule, sustain an ordinary routine without special supervision, work in coordination with or proximity to others, perform at a consistent pace, interact appropriately with supervisors, co-workers, and the public, and respond appropriately to changes in the work setting, and that Plaintiff was able to perform unskilled, repetitive tasks) ). The mental RFC also is supported by the November 2014 opinion of Ms. Weingart, who found that Plaintiff had normal ability to follow, understand, and remember simple instructions, regularly attend to a routine and maintain a schedule, and perform low stress and simple tasks, and was only moderately limited in her ability to perform simple and complex tasks independently and maintain attention and concentration for rote tasks. (Id. at 48).
It is well-settled that an RFC need not "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) ; see also Hayes v. Berryhill, No. 17-CV-6354-FPG, 2018 WL 3069116, at *7, 2018 U.S. Dist. LEXIS 104120, at *18 (W.D.N.Y. June 20, 2018) (finding no error where the "ALJ did not adopt any opinion in its entirety" but "several RFC findings were consistent with portions of each opinion," and the RFC was supported by medical evidence). In this case, it is clear to the Court how the ALJ assessed the opinion evidence in the record and the resulting RFC. Accordingly, Plaintiff's motion is denied on this point.
C. New Evidence Submitted to Appeals Council
Following her administrative hearing, Plaintiff submitted additional evidence to the Appeals Council, including: records from Strong Behavioral Health, dated July 29, 2015 through March 22, 2016; medical records from Erin Weingart, LCSW, from June 6, 2011 through November 13, 2015, including a psychological assessment dated November 13, 2015; and a *284 medical source statement from Kathe Healy, LMHC, dated April 5, 2016. (Dkt. 11-1 at 27). Plaintiff contends that this evidence is related to Plaintiff's impairments during the relevant period and would have influenced the ALJ's determination. (Id. at 27-28). The Appeals Council addressed this evidence and determined that these records "did not show a reasonable probability that it would change the outcome of the decision." (Dkt. 8-2 at 3). The above-mentioned records from Strong Behavioral Health, Ms. Weingart, and Ms. Healy are part of the record on appeal. (See id. at 32-34, 113-384, 386-91).
The Appeals Council must consider "new" and "material" evidence if it "relates to the period on or before the date of the administrative law judge hearing decision" and there is a "reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely based on timing. Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004). "For example, subsequent evidence of the severity of a claimant's condition may demonstrate that 'during the relevant time period, [the claimant's] condition was far more serious than previously thought.' " Newbury v. Astrue, 321 F. App'x 16, 18 n.2 (2d Cir. 2009) (quoting Pollard, 377 F.3d at 193 ) ). However, evidence that does not provide additional information about the claimant's functioning during the relevant time period, but instead relates to his or her functioning at some later point in time, need not be considered by the Appeals Council. See Vitale v. Apfel, 49 F.Supp.2d 137, 142 (E.D.N.Y. 1999) ("While the existence of a pre-existing disability can be proven by a retrospective opinion, such an opinion must refer clearly to the relevant period of disability and not simply express an opinion as to the claimant's current status").
The Court has reviewed the additional records from Strong Behavioral Health and agrees with Defendant that they do not contain any information that would reasonably be expected to change the disability determination. Rather, those records, like the records reviewed by the ALJ prior to issuing the written determination, reveal normal mental impressions, as well as improvement in Plaintiff's conditions. (See, e.g. , Dkt. 8-2 at 116 (in January 2016, "[Plaintiff] was pleasant and easily engaged during the interview," and Plaintiff, who used to have frequent panic attacks, now has them "very infrequently ... she could not remember when she last experienced one"); id. at 134-35 (in January 2016, mental status exam revealed that Plaintiff was more anxious than she had been in previous sessions, but she was cooperative, her thought processes were tangential, perception was normal, she was alert and oriented, her remote and recent memory was intact, her cognitive function was average, judgment was intact, and insight was good); id. at 158 (in February 2016, noting that Plaintiff "is very articulate, insightful, able to express her needs, and invested in treatment. Her attendance to all appointments is good, and she does work in therapy"); id. at 173 (in March 2016, noting that "[Plaintiff] presents today with sadness related to the death of her father. In general she is doing well and is working to improve her health") ). While some of these records reflect that Plaintiff continued to experience hypervigilance, paranoid thinking, and phobic feelings, a claimant's subjective complaints, without objective medical evidence, do not compel a finding of disability. Rather, "there must be medical signs or other findings which show the existence of a medical condition that reasonably could be expected to produce *285 the symptomatology alleged and that, considered with all the evidence, demonstrates that plaintiff is disabled." Richard H. v. Comm'r of Soc. Sec. , No. 5:17-CV-00515 (DNH/TWD), 2018 WL 4627118, at *14, 2018 U.S. Dist. LEXIS 165335, at *39 (N.D.N.Y. Aug. 15, 2018), adopted, 2018 WL 4625402, 2018 U.S. Dist. LEXIS 165077 (N.D.N.Y. Sept. 26, 2018). Despite these complaints from Plaintiff, her treatment plan mostly remained the same during this time (see, e.g. , id. at 135, 145, 157, 185, 194, 204, 213, 229, 252, 261, 290, 299, 331, 352, 361, 371), and her mental status exams were relatively normal.
Similarly, the further opinion evidence submitted by Ms. Weingart from November 13, 2015, is less favorable to Plaintiff than previous opinions offered by Ms. Weingart. (See Dkt. 8-2 at 387-89 (Plaintiff had normal "functioning" with "no evidence of limitation" in all areas of mental functioning; could work 30 hours per week; and would need a fixed schedule, frequent breaks, limited contact with the public, and performance of low stress tasks) ). Accordingly, the ALJ's consideration of the opinion evidence dated November 13, 2015, would not change the outcome of the disability determination.
The medical source statement from Ms. Healy, on the other hand, does assess Plaintiff as having more severe limitations than those found by the ALJ. Ms. Healy examined Plaintiff on April 5, 2016. (Dkt. 8-2 at 34). The statement indicates that Ms. Healy has treated Plaintiff for two years, as part of weekly group therapy. (Id. at 32). Ms. Healy found that Plaintiff was oriented to time and place, but explained that her mental impairments caused memory deficits, made her hyperreactive to daily stressors, gave her paranoid thoughts and panic attacks, and made her cognitively irrational. (Id. ). Ms. Healy opined that Plaintiff could not engage in full-time competitive employment, because of the severity of her recurrent and major depression and PTSD. (Id. ). Ms. Healy further opined that Plaintiff had difficulty understanding, carrying out, and remembering simple instructions; difficulty interacting with others; and difficulty handling or responding to issues. (Id. at 33). Ms. Healy opined that Plaintiff would be off task for more than thirty percent of the workday, and that she would be absent on average more than four days per month. (Id. at 34).
Defendant contends that the Appeals Council correctly concluded that the records submitted by Ms. Healy are outside of the relevant period and do not remark on Plaintiff's condition during the relevant period of disability. (Dkt. 14-1 at 20). The ALJ's written determination is dated February 22, 2016; therefore, the April 5, 2016 examination by Ms. Healy took place about six weeks outside of the relevant period, and close to four months after the administrative hearing. Plaintiff does not make any argument as to why this opinion specifically should have been considered by the Appeals Council and would result in a finding of disability, nor does the Court's review support such a conclusion.
While the medical source statement indicates that Ms. Healy has known Plaintiff for two years, the record does not appear to contain any treatment records from her. (See Dkt. 8-1). Neither Plaintiff's nor Defendant's medical summary includes a discussion of Plaintiffs treatment with Ms. Healy. (See Dkt. 11, 14, 16). Moreover, Ms. Healy's medical source statement does not indicate that it is meant to provide a retrospective assessment of Plaintiff's functioning. Bearing this information in mind, the Court finds that the April statement is not relevant to the period of disability. Rather, the report is a snap shot of Plaintiff's condition in April 2016, and does not clearly *286 refer to the relevant period of disability. See Gibson v. Comm'r of Soc. Sec. , No. 5:17-CV-0827 (DEP), 2018 WL 2085635, at *6, 2018 U.S. Dist. LEXIS 74954, at *17 (N.D.N.Y. May 3, 2018) (report of nurse practitioner not material to disability decision, because it concerned an evaluation outside of the relevant time period). Further, the statement does not appear to be supported by any underlying treatment notes, and conflicts with reports from the relevant period of disability. Accordingly, the decision by the Appeals Council that the April 2016 statement was not relevant to the period at issue was proper.
CONCLUSION
For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 11) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

In her reply brief, Plaintiff argues that the ALJ failed to consider Dr. Evans' recommendation that Plaintiff needs a flexible schedule, and that this recommendation "suggests missed work and off-task time." (Dkt. 16 at 6). The Court has reviewed the opinion evidence offered by Dr. Evans in June 2014, and it does not contain any opinion as to the amount of time Plaintiff would be absent from work or off-task. Rather, the recommendation regarding a flexible schedule appears to be related to Plaintiff's ability to attend doctor's appointments, rather than her functional limitations. To the extent Plaintiff contends that the ALJ failed to consider an opinion by Dr. Evans regarding Plaintiff's need for absences from work, that argument is rejected.